AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

**DISTRICT OF** Massachusetts

UNITED STATES OF AMERICA

V.

MARCOS PITH DE OLIVEIRA ROCHA, a/k/a LUCAS
and ARI ALVES TEIXEIRA

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 03M 0498 RBC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __November and December 2003__ in __Norfolk__ county, in the District of __Massachusetts__ defendant(s) did, (Track Statutory Language of Offense)

See Attachment A

in violation of Title __18__ United States Code, Section(s) __1546(a), 1028(a)(2) and 1426(b)__

I further state that I am a(n) __ICE Special Agent__ and that this complaint is based on the following
                                       *Official Title*
facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

*Thomas Ohlson*
Special Agent Thomas Ohlson
Signature of Complainant

Sworn to before me and subscribed in my presence,

12-17-2003 at 3:06 pm   at   Boston, Massachusetts
Date                                                          City and State

Robert B. Collings
United States Magistrate Judge
Name & Title of Judicial Officer                           Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## ATTACHMENT A

Count I:

knowingly forge, counterfeit, alter, possess and falsely make an alien registration receipt card and other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States;

Count II:

knowingly transfer an identification document knowing that such document was produced without authority; and

Count III:

utter and sell a false, forged, altered, antedated or counterfeit instrument or paper required or authorized by any law relating to the registry of aliens, knowing the same to be false, forged, altered, antedated or counterfeited.

## AFFIDAVIT OF THOMAS OHLSON

1.  I am a Special Agent with the United States Bureau of Immigration and Customs Enforcement ("ICE"), formerly a part of the Immigration and Naturalization Service, and have been so employed since April 1999. Among other duties, I am assigned to investigate the manufacture and sale of fraudulent resident alien cards, which are also known as Form I-551 or "green cards." From my training, I know that some persons manufacture and distribute counterfeit resident alien cards, as well as counterfeit social security account number cards ("social security cards") and other false identification documentation. The counterfeit documents are then sold to aliens who are illegally in the United States or who do not have permission to work in the United States. I am familiar with the various criminal statutes pertaining to the enforcement of immigration laws which make it unlawful to manufacture and sell green cards, including Title 18, United States Code, Section 1546(a) (immigration document fraud); Title 18, United States Code, Section 1028(a)(1)-(6) (producing identification and false identification documents); and Title 18, United States Code, Section 1426(b)(using and selling false naturalization, citizenship and registry documents).

2.  This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and agents of this service, as well as information provided to me by a confidential informant ("CI"). This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have learned during this investigation, but rather consists of that information necessary to support the charges alleged in the criminal complaint against **MARCOS PITH DE OLIVEIRA ROCHA a/k/a LUCAS and ARI ALVES TEIXEIRA.**

3.  This case is based upon information obtained from CI that a Brazilian male in Quincy, Massachusetts was manufacturing fraudulent green cards, social security cards, and international driver's licenses.

4. CI related that this individual charged $100.00 for a green card, $50.00 for a social security card, and $150.00 for an international driver's license. CI mentioned, in addition, that the individual used telephone number (617) 869-2504.

5. During November 2003, CI, under this officer's direction, placed a telephone call to (617) 869-2504 for the purpose of arranging a document purchase with the above-mentioned individual. CI, however, spoke to another male individual who called himself "LUCAS", and stated that he was the brother-in-law of the individual that CI was trying to contact. LUCAS related to CI that he was the person who made the documents, and that he would sell CI three sets of documents (each set of documents would consists of one green card and one social security card) for $450.00. CI stated to LUCAS that CI would telephone him back later that day to confirm a date and time for the document deal.

6. Approximately two hours later, CI placed another telephone call, under this officer's direction, to LUCAS at (617) 869-2504 in order to arrange a document purchase for the next day from LUCAS in Quincy, Massachusetts. During this telephone call, LUCAS and CI agreed that LUCAS would charge CI $450.00 for three sets of documents (as described in the previous paragraph), and that could he could provide same-day service to CI. It was agreed that CI would meet LUCAS on the following day at the Quincy Center MBTA Station, in Quincy, Massachusetts. LUCAS instructed CI to phone him after arriving at the station.

7. On the day after the conversation described above, this officer provided CI three green-card style photographs (with names and dates of birth, originally supplied and written by CI, under this officer's direction, on the previous day) for presentation to LUCAS. In addition, CI was provided with $450.00 to purchase three sets of fraudulent documents from LUCAS.

8. At the appointed time, CI arrived at the Quincy Center MBTA station, and placed a telephone call to LUCAS at (617) 869-2504 to inform him that CI was on-scene.

2

CI spoke to **LUCAS**, who told CI that he would be at the station shortly. Several phone calls ensued between CI and **LUCAS** because **LUCAS** (and a friend of his, named "**ARI**", who also attempted to meet with CI at the Quincy Center Station) could not find CI at the station. Having failed to meet CI at the station, **LUCAS** instructed CI to travel to 58 Copeland Street, Apartment #1 to meet with **LUCAS** and **ARI**. Once CI entered the apartment, CI gave the $450.00 to **ARI**. While inside the apartment, CI observed **LUCAS** manufacture the documents using a computer. Specifically, CI observed **LUCAS** use a monitor, a keyboard, a scanner, a cutting board, and tape. While **LUCAS** made the documents on the computer, **ARI** cut the photographs (provided to them by CI) to create the green cards. Before CI left the apartment, **LUCAS** and **ARI** gave CI the three sets of documents.

9. After CI left the apartment, CI gave the three sets of documents to this officer. The documents consisted of green cards, each with an "A-Number" (the identification number used on green cards) and social security cards in the name of the three individuals whom the CI had provided to **LUCAS** and **ARI**. ICE records checks were conducted on the three A-numbers, all of which were assigned to persons different from the ones named on the green cards provided by **LUCAS** and **ARI** to CI.

10. Based on my training and experience, as well as the above facts, I believe that these three sets of documents are all forgeries.

11. During the second week of December 2003, CI purchased another six sets of counterfeit green cards and social security cards from **LUCAS** in a similar manner to that described above. **ARI** was also present during this second purchase, and assisted **LUCAS** in the manufacture and sale of these documents.

12. Based in part on the above facts, a search warrant was issued by the United States District Court for the District of Massachusetts (Number 03M0497RBC) on December 15, 2003 to search 58 Copeland Street, Apartment #1, Quincy, Massachusetts.

3

13. On December 17, 2003, this affiant and other ICE officers executed the search warrant at 58 Copeland Street, Apartment #1, Quincy, Massachusetts. During the execution of the search warrant, ICE officers found, among other things, several fake Brazilian driver's licenses, and several fraudulent green cards and social security cards. At the time of the execution of the search warrant, the individuals previously identified by the CI as **LUCAS** and **ARI** were both present in the apartment. The person that CI identified as **LUCAS** told officers that his real name is **MARCOS PITH DE OLIVEIRA ROCHA** and the person CI identified as **ARI** told officers that his real name is **ARI ALVES TEIXEIRA**.

4

14. Based on the facts set forth above, I believe there is probable cause to conclude that **MARCOS PITH DE OLIVEIRA ROCHA, a/k/a LUCAS, and ARI ALVES TEIXEIRA** on or about November 2003, and again on or about December 17, 2003 and other dates in December 2003 did knowingly forge, counterfeit, alter, possess and falsely make an alien registration receipt card and other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States in violation of Title 18, United States Code, Section 1546(a); did knowingly transfer an identification document knowing that such document was produced without authority, in violation of Title 18, United States Code, Section 1028(a)(2); and did utter and sell a false, forged, altered, antedated or counterfeit instrument or paper required or authorized by any law relating to the registry of aliens, knowing the same to be false forged, altered, antedated or counterfeited.

Thomas L. Ohlson
Special Agent
United States Immigration and
Customs Enforcement

Subscribed and sworn to before me this 17th day of December, 2003.

Robert B. Collings
United States Magistrate Judge

5